# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| KIM BUCHANAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-00499 |
| | ) Judge Sharp |
| SUMNER COUNTY BOARD OF | ) |
| EDUCATION and BENNY BILLS, | ) |
| individually and in his official capacity | ) |
| as Director of Sumner County Schools, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the Court is the Motion for Summary Judgment (Docket No. 20) filed by Defendants Sumner County Board of Education ("School Board") and Benny Bills. Despite being granted two extensions of time,[1] Plaintiff has filed no response to the Motion. The Motion for Summary Judgment will be granted.

## I. FACTUAL BACKGROUND

Where, as here, a party fails to respond to a Motion for Summary Judgment, the Court may rely upon the facts provided by the moving party. Guarino v. Brookfield Twp. Tr., 980 F.2d 399, 404-05 (6th Cir. 1992). Those facts establish the following:

Plaintiff was a contract teaching assistant for special needs students at Sumner County's Joe Shafer Middle School during the 2007-2008 and 2008-2009 school years. The contract for the 2008-

---

[1] In his Motion to Withdraw (Docket No. 34), Plaintiff's counsel indicates that he has been unable to communicate with his client, even though he has placed several telephone calls to her, left voicemail messages on her answering machine, and sent her a certified letter notifying her of his intention to withdraw as required by Local Rule 83.01(g). Counsel's Motion to Withdraw will be granted.

2009 school year required that an employee be rehired in order to continue working for the School Board, and that "nothing in this contract shall be construed to provide future or continued employment unless specifically agreed to by the parties in a separate agreement." (Docket No. 20-5, Exh. E at 1). The contract also provided that the "employee agrees to observe and follow all Tennessee laws, all rules and regulations of the State Board of Education and all rules, regulations and policies of the Sumner County Board of Education[.]" ( Id.). One policy of the Board is that school personnel are required to report all suspected or actual child abuse to the State of Tennessee by calling the Child Abuse Hotline.

In November 2008, Plaintiff told Assistant Principal Serelena Elmore ("Elmore") that Valerie Ohler ("Ohler"), the other teaching assistant in her classroom, was muttering negative comments under her breath while working with children under her care. Elmore spoke with the classroom teacher, Laura Gallbreath ("Gallbreath"), about Ohler, but Gallbreath told Elmore she had not observed the conduct at issue. Because Gallbreath did not witness the conduct and Plaintiff did not believe reportable child abuse had occurred, Elmore did not call the hotline. Elmore did, however, request that Plaintiff send her a note which indicated any more problematic conduct by Ohler, but Plaintiff never provided Elmore with any such note.

In February 2009, Plaintiff told Elmore that Ohler threw a pillow at a child while on a field trip. Elmore investigated the incident and determined Ohler was playing around and only pretended to throw the pillow at the child, who was not hit by the pillow. Again, Elmore did not discern any conduct that needed to be reported as actual or suspected child abuse.

On April 29, 2009, Gallbreath sent an e-mail to Norma Dam ("Dam"), Sumner County's Special Education Coordinator, complaining about Ohler, and including a list of "troublesome

2

issues" with Ohler which occurred almost daily. Such issues included calling children names or liars; telling children that if they were hers, she would put them up for adoption; telling children that they were disgusting, their mothers were disgusting, and/or their mother should be in jail; cussing while changing a student's diaper; and holding a student's neck down while forcing him to pick up items off the floor. Gallbreath told Dam that she did not observe most of this conduct, but rather Plaintiff had.

On May 1, 2009, Elmore received the email and attached list, and she and Principal David Hallman ("Hallman") met with Plaintiff. Upon learning that Plaintiff had not made a report of suspected child abuse with respect to Ohler's conduct, Elmore and Hallman required Plaintiff to make such a report by calling the hotline.

Plaintiff was informed on May 15, 2009, that her contract would not be renewed.[2] However, Plaintiff was permitted to work until May 22, 2009, which was the last day of work for teaching assistants that school year. According to Defendants, Plaintiff's employment contract was not renewed for several reasons, including classroom dynamics, Plaintiff's failure to report child abuse and Plaintiff's insubordination.

On May 21, 2010, Plaintiff filed suit in this Court alleging that, from November 2008 until May 2009, she made reports to the principal of Joe Shafer Middle School of "what she believed to be neglect and abuse of special needs students by a teacher with whom she worked," and that her employment was terminated in retaliation for reporting child abuse. (Docket Entry No. 1 at ¶¶ 9, 19, 23 & 29). She asserts causes of action under 42 U.S.C. § 1983 for violation of her First Amendment right to protected speech, and the deprivation of her substantive and procedural due process rights

---

[2] Ohler's contract was also not renewed.

under the Fourteenth Amendment. Plaintiff also alleges she was wrongfully discharged in violation of Tennessee statutory and common law.

## II. LEGAL ANALYSIS

While a court may accept the defendant's version of the facts when a Motion for Summary Judgment is unopposed by plaintiff, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." Carver v. Bunch, 946 F.3d 451, 455 (6th Cir. 1992). Rather, "[t]he court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that the movant has demonstrated the absence of a genuine issue of material fact." Id. Having undertaken the requisite review, the Court finds that Defendants have carried their burden and are entitled to summary judgment.

To begin with, Plaintiff's Complaint is untimely. Section 1983 contains no statute of limitations and, therefore, courts look to analogous state law to supply the limitations period. Wilson v. Garcia, 471 US. 261, 266-67 (1985). In Tennessee, "[c]ivil actions for compensatory or punitive damages . . . brought under the federal civil rights statutes" must be filed within one year "after the cause of action accrued," Tenn. Code Ann. § 28-3-104(a)(3), and the statute of limitations begins to run on the date "when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action." Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir. 2003). Likewise, claims for wrongful discharge under state law are governed by the one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104. Weber v. Moses, 938 S.W.2d 387 (Tenn.1996). Under both federal and state law, a claim for wrongful termination begins to run when a plaintiff receives unequivocal notice that he or she is being terminated, not on the last day of employment. See, Delaware State College v. Ricks, 449 U.S. 250, 259 (1980) ("limitations

periods commenced to run when the tenure decision was made and [the plaintiff] was notified"); Weber, 938 S.W.2d at 391-92 ("a discriminatory termination ceases and is complete, when the plaintiff is given unequivocal notice of the employer's termination decision, even if employment does not cease until a designated date in the future").

Here, the undisputed evidence in the record shows that Plaintiff received written notice on May 15, 2009, that her contract would not be renewed. She had until May 17, 2010,[3] to file suit, but did not do so until May 22, 2010. Although a statute of limitations may be tolled for equitable reasons, Plaintiff has provided no facts or arguments which would suggest that equitable tolling is appropriate in this case.

Additionally, in light of the undisputed evidence before the Court, all of Plaintiff's claims fail on the merits. Turning first to Plaintiff's First Amendment claim, Plaintiff alleges that she "was engaged in protected speech relating to her complaints to school officials regarding suspected abuse of special needs children" and that speech "touched upon a matter of public concern." (Docket Entry No. 1, at ¶¶ 21-22). However, school employees are required to make reports about child abuse to state authorities, a requirement imposed by both School Board policy and Tennessee statute. See, Tenn. Code Ann. § 47-1-403(a) & Docket Entry No. 20-1, Elmore Decl. ¶5. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). This remains so, even when the speech is made in the workplace and up the chain-of-command. Burgess v. Paducah Area Transit Auth., 387 Fed. Appx. 538, 545 (6th Cir. 2010); see, Eugenio v. Walder,

---

[3] May 15, 2010 was a Saturday and, under Fed. R. Civ. P. 6(a), Plaintiff had until the next Monday within which to commence this litigation.

2009 WL 1904526 at *7 (S.D.N.Y. 2009) (where child abuse reports were made by public school teachers to department of social services and the teachers' principal, the speech was not protected under the First Amendment because it was made as a part of the teachers' official duties).

Plaintiff's First Amendment claim also fails because she has not shown that her alleged protected speech was a motivating factor in the decision not to renew her contract. See, Leary v. Daeschner, 228 F.3d 729, 737 (6th Cir. 2000) (citation omitted) (to establish a claim of First Amendment retaliation, plaintiff must not only show that she engaged in constitutionally protected activity, but also that "the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights"). Here, Defendants claim that Plaintiff was not fired because she reported child abuse, but rather for legitimate non-retaliatory reasons, an explanation which Plaintiff has failed to call into doubt.

The conclusion that Plaintiff's First Amendment claim fails also requires dismissal of her Fourteenth Amendment substantive due process claim because "a cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable," and a "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim." Brandenburg v. Housing Auth. of Irvine, 253 F.3d 891, 900 (6th Cir. 2001). As for Plaintiff's procedural due process claim under the Fourteenth Amendment, that cause of action fails because an essential component of a due process claim is the loss of a recognized property interest.

Property interests "are not created by the Constitution," but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972). Plaintiff points to no rule or

understandings which would suggest that she had a right to continued employment, and, under Tennessee law, school employees (at least those who are non-tenured) "have no 'legitimate claim of entitlement' to continued employment to give rise to a property interest." Rowe v. Bd. of Educ. of City of Chattanooga, 938 S.W.2d 351, 355 (Tenn. 1996).

Finally, Plaintiff's claim for wrongful discharge under Tennessee law fails because, even if she could hurdle the obstacles presented by the immunities afforded Defendants under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101 *et seq.*, and even ignoring that she technically was not terminated since her contract was simply not renewed, Plaintiff has not shown that the decision not to renew her contract was based upon unlawful reasons. Although "employers need freedom to make their own business judgment without interference from the courts," the "tort action of retaliatory or wrongful discharge is available to employees discharged as a consequence of an employer's violation of a clearly expressed public policy." Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 (Tenn. 1997). Nevertheless, to prevail, Plaintiff "must point to a clear mandate of public policy, evidenced by an unambiguous constitutional, statutory, or regulatory provision which [Defendant] violated," id., when it decided not to renew her contract.

Here, Plaintiff alleges in her Complaint that she was "terminated as a direct result of her reporting suspected child abuse and neglect by a fellow teacher" and that "[t]his termination violates the statutory laws, common law, and public policy of the state of Tennessee[.]" (Docket Entry No. 1 at ¶ 29). However, the only *evidence* before the Court is Defendants' unchallenged statement that they terminated Plaintiff for several different reasons, none of which had anything to do with her reporting child abuse.

When the moving party has filed a properly supported motion for summary judgment, the

non-moving party may not rest upon the mere allegations set forth in the Complaint, but rather must set forth "'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (italics in original, quoting Fed. R. Civ. 56(e)). Plaintiff has not done so in this case, and, therefore, summary judgment is appropriate with respect to all of her claims.

### III. CONCLUSION

On the basis of the foregoing, Defendants' Motion for Summary Judgment (Docket No. 20) will be granted. The Court will also grant the Motion to Withdraw (Docket No. 34) filed by Plaintiff's counsel.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE